Successors of Gamarra, *S. en C.*, Plaintiff and Appellee, *v.* Manuel Navarro, Defendant and Appellant.

No. 4976.    Argued February 4, 1930.—Decided March 27, 1930.

*Antonio López*, for appellant.    *Pedro G. Quiñones*, for appellee.

Mr. Justice Texidor delivered the opinion of the court.

It appears from the pleadings in this case that Manuel

Navarro subscribed and delivered to the plaintiff an instrument, which reads as follows:

"San Lorenzo, Porto Rico.—Dear Sirs: I hereby guarantee, constituting myself surety and principal obligor for, Mr. Pedro Hernández to the amount of five hundred dollars ($500) for goods purchased or which may be purchased by him in your store.

"To the faithful performance of this obligation, I voluntarily bind my present property and all such as I may acquire in the future. Without further, I am, yours truly, (Signed) Manuel Navarro, Surety."

There is no question as to either the identity, execution or delivery of the above instrument, since the parties are agreed on these points.

It is alleged in the complaint that, according to a balance struck in an account with Pedro Hernández on December 29, 1925, the latter was owing to the plaintiff the sum of $1,311.51, of which the defendant had become a principal debtor up to the amount of $500, which sum he has not paid either in whole or in part. The defendant answered and alleged that from July 20, 1925, when the contract of suretyship was made, until December 29 of the same year, Hernández paid on account to the plaintiff various sums aggregating $1,050, and that the principal debt secured had become extinguished.

A statement of the account of Pedro Hernández with Successors of Gamarra was introduced in evidence and copied into the opinion of the trial court. The first item is a debit balance of $2,652.31, entered on May 31, 1925, and again debited on July 29 of the same year. There are shown several credit items dated, respectively, June 13 and 30, July 28, September 15, October 10, November 12, and December 29, 1925, each for $200, except the one dated July 28, which was for $250.

After a trial *de novo* in the District Court of Humacao, that court rendered a judgment in favor of the plaintiff for

$500, without costs. From that judgment the present appeal has been taken, in support of which two errors are assigned. The first assignment reads as follows:

"First.—In holding that the complaint states facts sufficient to constitute a cause of action."

This objection to the sufficiency of the complaint was set out in the answer, by way of special defense.

The plaintiff offered in evidence deed No. 138 of June 4, 1925, executed before notary Damián Monserrat y Suro, setting forth the articles of partnership of Successors of Gamarra, S. en C., (limited partnership), and duly recorded in the mercantile registry. It was admitted without objection. It appears from that instrument that by another deed of April 16, 1921, Primitivo Franco, Narciso García and Gaspar Berga, as managing partners, and Francisco Gamarra, as a silent partner, constituted a commercial partnership under the firm name of Successors of Gamarra, S. en C., for a period of four years until March 6, 1925; that at the end of that period the partners agreed on closing the business on March 31, 1925, declaring the partnership dissolved and in liquidation; that in order to continue the business of the dissolved partnership and to take charge of its liquidation, as of June 1, 1925, the present partnership has been formed by the said Franco, Berga and García and the heirs of Francisco Gamarra, the latter as silent partners and the former as managing partners, for a period of four years, with a capital amounting to $80,000, which includes accounts, credits and merchandise derived from the partnership Successors of Gamarra, S. en C., which was dissolved as above stated. By clause 20th of the said deed the new partnership was appointed liquidator of the former one.

The appellant now maintains that in this case two distinct partnerships are involved, and that the balance of $2,652.31, which Pedro Hernández owed on May 31, 1925, belonged to the former partnership; that in taking over the assets and

liabilities of that partnership, the new firm did so only for the purposes of liquidation and to draw from such assets its own capital; and, hence, that the new partnership can not sue to recover as its own a credit belonging to the old partnership.

That a new partnership was created is a fact beyond all question. Similarly it is also a fact that the credit against Pedro Hernández arose from transactions with the partnership Successors of Gamarra, *S. en C.*, which was legally extinguished on the 6th or 7th of March, 1925. But in consequence of the said deed of June 4, 1925, all the debts owing to the former partnership became, together with other property, the capital of the new partnership, including therein the claim against Hernández. That claim is not included in any liquidation in the sense meant by the appellant. It is a part of the assets of the plaintiff as the result of a legal and perfect transfer, and no party other than plaintiff itself has an interest in the claim. Section 51 of the Code of Civil Procedure, which has been cited, refers to the prosecution of actions in the name of the "real party in interest", and the plaintiff herein is such a party.

It is quite clear that no application lies here of the cases of *Calenti* v. *Registrar*, 14 P.R.R. 671, and *García Díaz* v. *Registrar*, 33 P.R.R. 911, decisive of questions which are not involved in this litigation. Nor can application be made of the doctrine laid down in *J. Ochoa & Brother* v. *José González Clemente & Co.*, 29 P.R.R. 948, because that was an action brought by an agent in the name of his principal, and the case at bar, in view of the facts, deals with an action brought by the principal in its own right.

Our decision in *Successors of Hilario Santos Ltd.*, v. *Quintana Bros. & Co. et al.*, 39 P.R.R. 297, lays down definitely and clearly the applicable doctrine, which is not the one invoked by the appellant.

We have given some consideration to this assignment of error for the sake of a clear determination of the rights

involved. But it is seriously defective, as pointed out by the appellee. It urges the insufficiency of the complaint, and the point is argued on the basis of the evidence introduced at the trial and not solely on the allegations in that pleading. This is an essential defect.

We find no merit in the foregoing assignment.

The second assignment of error is formulated thus:

"Second. In holding that the surety contract had not terminated by payment of the debt secured, thus violating, by non-application, the doctrine laid down in Brunet Saenz & Co. v. Aponte, 33 P.R.R. 509."

The appellant contends that the surety instrument is ambiguous and maintains that it was drafted by Fernández Avella, who is an employee of the plaintiff. There is no doubt that the appellant subscribed the instrument, and it must be assumed that he did so consciously in the ordinary course of business. When he subscribed it he made it his own, and his objection comes too late.

Undoubtedly the instrument is not perfect. It is the risk run where any writing whose preparation requires special knowledge of the law is drafted by an unskilled person. But this does not mean that the instrument is ambiguous. Perhaps the defect lies in the fact that it includes too much; but it clearly shows what the parties intended. As to the solidary character of the obligation, the use of the words "constituting myself surety and principal obligor" leaves no room for doubt. And this point involves the essence of the obligation.

If, as maintained by the appellant, the instrument refers to an existing obligation as well as to a future one, this would be no source of ambiguity. According to section 1726 of the Civil Code of Porto Rico future debts may be secured. Almost all contracts of surety are based on an existing obligation and on a default or debt which, as such, might arise in the future.

In the present case, the surety was willing to answer for Hernández up to $500 of any sum which the latter owed or might owe in the future, and he so stated in the instrument.

Must the present case be controlled by the decision in *Brunet Sáenz & Co.* v. *Aponte,* 33 P.R.R. 509? We have studied that decision and the decision on rehearing, from which the appellant quotes some paragraphs. We find:

First: That in *Brunet Sáenz & Co.* v. *Aponte, supra,* the liability of the surety was limited both as to time and amount.

Second: That in the said case and with reference to a judgment of the Supreme Court of Spain, of December 31, 1886, it was said:

". . . . . the cited case can not even remotely be applied to the one at bar, because the former deals with a surety contract in which the sureties bound themselves as principal obligors, thereby losing their character as sureties to become co-debtors, and it was as such co-debtors that their liability was held to be unlimited."

The following is taken from the said judgment of the Supreme Court of Spain:

"Considering that, from the terms used by F. Cifuentes & Co. in suggesting to Don Bartolo Lesaga that the latter supply V. Aldea & Co. with provisions and from the contents of the invoice of May 17, 1882, in which the former stated that they were engaged in tobacco transactions with the latter and expressed the wish that he should treat them the best he could, 'and that they would be their sureties and principal obligors,' which words can not be construed as limited to the invoice on which they appear but as including every transaction that might be carried out, the judgment appealed from is not at variance with the legal doctrine invoked in the first assignment, since the surety contract herein neither exceeds the principal obligation assumed nor is made extensive to other unknown obligations."

As the doctrine above set forth has been adopted in this jurisdiction, further discussion of appellant's contention would almost seem superfluous. But we think it useful to add something.

Of the greatest importance, from the standpoint of the present case, is the declaration made in *Brunet Sáenz & Co.* v. *Aponte, supra,* namely, ". . . a surety contract whereby the sureties constitute themselves as principal obligors thereby losing their character as sureties and becoming co-debtors." But such a declaration requires careful study or interpretation.

In a judgment of the Supreme Court of Spain, dated December 29, 1898, which involved an appeal in an action between Doña Concepción and Doña Paulina Costa, on the one side, and Doña Teresa Foch, on the other, it was held that, as suretyship consists in the obligation to perform some engagement contracted by a third person in case the latter should fail to do so, it would be consistent for the surety to bind himself *in solidum* with the principal debtor, without the surety contract losing thereby its proper character.

There would seem to be some conflict of doctrine between the two judgments cited; but the conflict is only apparent. In the contract in which the surety binds himself *in solidum* with the principal debtor, he does not lose his status as surety, and the enforcement of his obligation depends upon the failure of the debtor to properly perform the agreement; then the solidary obligation originally created produces its effects, the principal one of which is the direct liability of the surety and his duty to perform the contract in its entirety. Generally, the formula used is that of "principal obligor," which in itself seems to indicate the moment when the obligation *in solidum* operates with true and substantial effectiveness.

In the present case the words "principal obligor" were used in the contract of suretyship. Here the surety, at the time the obligation secured is to be performed, becomes a co-debtor without the benefit of a division of the debt, up to $500, since he assumed responsibility for the whole of that amount. When he subscribed the undertaking the principal debtor owed a balance and was enabled to buy more goods.

The surety instrument, recites "which may be purchased", thereby covering future dealings, and it covers past transactions by the use of the expression "goods purchased."

The construction most favorable to the surety, which was applied in *Brunet Sáenz & Co.* v. *Aponte, supra,* is inapplicable in the present case of an obligation *in solidum* of a codebtor.

We hold that the second error assigned is non-existent. The judgment appealed from must be affirmed.